**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        jgavenman@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME COX and VICENTE BACA, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>     v.<br><br>LILYANA NATURALS, LLC,<br><br>                              Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

1    Plaintiffs Jaime Cox and Vicente Baca ("Plaintiffs") bring this action on behalf of

2  themselves and all others similarly situated against LilyAna Naturals, LLC ("LilyAna Naturals" or

3  "Defendant").  Plaintiffs make the following allegations pursuant to the investigation of their

4  counsel and based upon information and belief, except to the allegations specifically pertaining to

5  themselves, which are based on personal knowledge.

6                                  **NATURE OF THE ACTION**

7    1.    This is a putative class action lawsuit regarding Defendant's false and misleading

8  labeling and marketing of its skincare products.  To capitalize on consumer demand for natural

9  skincare products, Defendant makes false and misleading natural claims about its LilyAna Eye

10 Cream and Face Cream products (collectively, the "Products") to sell LilyAna products at a

11 premium price.  Defendant knows that the Products contain ingredients that are not natural, but are

12 actually synthetic.  Even so, Defendant continues to make natural misrepresentations because

13 Defendant is aware that consumers choose LilyAna Naturals skincare products over other skincare

14 products based on natural labeling statements and branding.

15   2.    To differentiate Defendant's Products from other skincare products, Defendant

16 makes false and misleading representations on the Products' labels and packaging that the Products

17 are natural and made with all natural ingredients ("Natural Representations").  However, the

18 LilyAna Naturals Eye Cream contains Propylene Glycol and/or Polysorbate 60—two synthetic

19 ingredients—and the LilyAna Face Cream contains Polysorbate 60.  These substances are both

20 unnatural, laboratory made ingredients.

21   3.    Based on Defendant's false and misleading natural claims, Plaintiffs Jamie Cox and

22 Vicente Baca and the Class Members they seek to represent, bought the Products at a premium

23 price.  Because Plaintiffs and other similarly situated persons were taken in by Defendant's false

24 natural promises, Plaintiffs bring this class action against Defendant to seek reimbursement of the

25 Premium Plaintiffs and Class Members paid based on Defendant's misrepresentations.

26   4.    As a direct and proximate result of Defendant's false and misleading advertising

27 claims and marketing practices, Plaintiffs and the members of the Class, as defined herein,

28 purchased LilyAna Naturals Products.  Plaintiffs and members of the Classes purchased LilyAna

Naturals Products because they were deceived into believing that LilyAna Naturals Products were natural and contained all natural ingredients.  As a result, Plaintiffs and members of the Class purchased LilyAna Naturals Products and have been injured because LilyAna Naturals Products contain synthetic ingredients.  Plaintiffs and Class Members purchased skincare products designed, marketed, distributed, and sold by Defendant as natural.  Further, Plaintiffs and Class Members relied to their detriment on Defendant's representations that the Products are natural.  Plaintiffs and Class Members would not have paid to purchase Defendant's Products—or would not have paid as much as they did to purchase them—had they known they are not, in fact, natural.  Plaintiffs and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representations.

5.      Plaintiffs seek relief in this action individually and on behalf of those similarly situated and seek to represent a National Class and a California Subclass (defined *infra*, ¶ 36).  Plaintiffs seek injunctive relief to stop Defendant's unlawful labeling and advertising of the Products.  In addition, Plaintiffs seek damages, interest thereon, reasonable attorneys' fees and costs, other equitable relief, and disgorgement of all benefits, permissible under the law, that Defendant has enjoyed from its conduct.

6.      Plaintiffs also seek relief in this action individually and on behalf of purchasers of the LilyAna Naturals Products in California for violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

**PARTIES**

7.      Plaintiff Jamie Cox is a citizen of California, residing in Pittsburg, California.  In or around August 2022, Plaintiff Cox purchased LilyAna Naturals Eye Cream for her personal use for approximately $29.99 from a brick-and-mortar Walmart store in California.  Prior to her purchase of the product, Plaintiff Cox reviewed the Product's labeling and packaging and saw that the Product was labeled natural on the front of both the packaging and the bottle, and on the back of the packaging.  Plaintiff Cox relied on that representation to choose her skincare Product over

comparable products.  Plaintiff Cox saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her product was entirely natural. Plaintiff Cox did not realize that the Product included synthetic ingredients inconsistent with the representations made by Defendant.  Plaintiff Cox relied on the representations and warranties that her Product was natural in deciding to purchase her Product.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true.  However, Plaintiff Cox remains interested in purchasing natural skincare products and would consider LilyAna Naturals in the future if Defendant ensured the Products were actually natural.  In making her purchase, Plaintiff Cox paid a substantial price premium due to the false and misleading Natural Representations.  However, Plaintiff Cox did not receive the benefit of her bargain because her product, in fact, was not entirely made with natural ingredients.  Plaintiff Cox further understood that the purchase came with Defendant's representations and warranties that her product was natural.

8.     Plaintiff Vicente Baca is a citizen of California, residing in Campbell, California.  In or around December 2022, Plaintiff Baca purchased LilyAna Natural Eye Cream for his personal use for approximately $29.99 from Amazon.com.  Prior to his purchase of the product, Plaintiff Baca reviewed the Product's labeling and advertising and saw that the Product was labeled natural consistently on both.  Plaintiff Baca relied on that representation to choose this skincare product over comparable products.  Plaintiff Baca saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that his Product was entirely natural.  Plaintiff Baca did not realize that the Product included synthetic ingredients inconsistent with the representations made by Defendant.  Plaintiff Baca relied on the representations and warranties that his Product was natural in deciding to purchase his Product.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known these representations were not true. However, Plaintiff Baca remains interested in purchasing natural skincare products and would consider LilyAna Naturals in the future if Defendant ensured the Products were actually natural.  In

making his purchase, Plaintiff Baca paid a substantial price premium due to the false and misleading natural representations.  However, Plaintiff Baca did not receive the benefit of his bargain because his Product, in fact, was not entirely made with natural ingredients.  Plaintiff Baca further understood that the purchase came with Defendant's representations and warranties that his product was natural.

9.      Defendant LilyAna Naturals, LLC is a limited liability company organized and existing under the laws of Mississippi, with its principal place of business in Collinsville, Mississippi.  LilyAna Naturals manufactures, sells, and/or distributes LilyAna Naturals branded products, and is responsible for the advertising, marketing, trade dress, and packaging of the Products.  LilyAna Naturals manufactured, marketed, and sold the Products during the class period. The planning and execution of the advertising, marketing, labeling, packaging, and corporate operations concerning the Products and Natural Representations was primarily carried out at LilyAna Naturals' headquarters and facilities within Mississippi.  The policies, practices, acts, and omissions giving rise to this action were developed in, and emanated from, LilyAna Naturals' headquarters in Collinsville, Mississippi.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because there are more than 100 Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and Plaintiffs, as well as other Class Members, are citizens of states different from Defendant.

11.      This Court has personal jurisdiction over Defendant because it conducts substantial business within California, including the sale, marketing, and advertising of the Products.  A substantial portion of the events giving rise to Plaintiffs' claims occurred in this State, including Plaintiffs' purchase of their products.

12.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.  In addition, Plaintiffs purchased the unlawful Products in this District, and Defendant has marketed, advertised, and sold the Products within this District.

1

## FACTUAL ALLEGATIONS

2

### A.    Background On The Natural Skincare Industry

3        13.    In recent years, consumers have progressively become more apprehensive about the

4    ingredients they use on their skin, especially ingredients that stem from a lab rather than nature, or

5    synthetic ingredients.  As a result, the natural skincare industry has boomed and become a multi-

6    billion-dollar global industry.  Indeed, the clean beauty "global market is expected to reach $22

7    billion by 2024."[1]  Increased preference for natural ingredients in beauty products is demonstrated

8    in generational studies, with younger generations driving consumer trends toward greater

9    awareness regarding product ingredients.  For example, a 2017 Statista survey found that 43% of

10   consumers in the Millennial and Gen Z demographic prefer natural skincare, compared to 31% of

11   overall consumers in the United States with the same preference.[2]  One recent survey also found

12   that 80% of female teens prefer clean or natural beauty cosmetic products.[3]  With the growing

13   consumer demand for natural cosmetic products in most consumer demographics, companies, like

14   Defendant, are taking advantage of the demand by producing products that are purportedly natural.

15       14.    According to a recent study done by Environmental Working Group, leading

16   reasons why consumers choose to purchase natural skincare products include: (1) to avoid harmful

17   ingredients; (2) better for skin health; (3) natural products are more environmentally friendly; and

18   (4) natural products work better for skin health.[4]  Consumers have grown increasingly

19   apprehensive towards synthetic substances and seek to avoid these ingredients by purchasing

20   natural skin care products.  This growing apprehension stems from recent findings about the use of

21   _____

22   [1] ESW, "The Clean Beauty Market: By the Numbers," https://esw.com/blog/the-clean-beauty-market-by-the-numbers/ (July 7, 2022).

23   [2] *Id.*

24   [3] *See* Business Wire, "Piper Sandler Completes 41st Semi-Annual Generation Z survey of 7,000 U.S. Teens," https://www.businesswire.com/news/home/20210407005707/en/Piper-Sandler-Completes-41st-Semi-Annual-Generation-Z-Survey-of-7000-U.S.-Teens.

25

26   [4] *See* Dominique Petruzzi, "Main Reasons for Purchasing Natural and Organic Skin Care Products Among Consumers in the United States as of September 2018," https://www.statista.com/statistics/1114869/reasons-consumers-buy-natural-organic-skin-care-products-us/#:~:text=As%20of%202018%2C%20the%20main,were%20free%20of%20harmful%20ingredients (February 2, 2022).

27

28

chemicals such as Formaldehyde, Phthalates, per-and polyfluoroalkyl substances ("PFAs") and Perfluorochemicals ("PFCs"), and Parabens in cosmetic products that can negatively impact health.[5] While not all chemicals and synthetic ingredients are harmful, many consumers, including Plaintiffs, are careful about what they apply to their skin and turn to natural products containing naturally sourced ingredients, with the belief that natural products are safer.

15.     Synthetic ingredients are not naturally sourced. Naturally sourced ingredients are readily found in nature, and often come from plants, animals, or minerals, whereas synthetic ingredients are "industrially produced" to molecularly replicate and/or improve natural ingredients.[6]

16.     As a result, consumers concerned about synthetic and other unnatural ingredients seek skincare brands that manufacture, sell, and/or distribute natural products that do not contain synthetic or other ingredients sourced outside of nature.

17.     In response to consumers' desire to purchase natural skincare products, some companies, including Defendant, "greenwash" their products by deceptively claiming that their products are natural. Relevant here, Defendant continues to use unnatural synthetic ingredients in its Products despite the fact that it claims the Products are natural.

18.     The cosmetics industry is not heavily regulated by the FDA in terms of what makes cosmetic products natural or organic.[7] Even so, consumer protection laws require that companies ensure that product labeling, marketing, advertising, and selling is truthful and not misleading in any respect.[8] Companies cannot use misleading or deceptive marketing tactics to incentivize consumers to purchase products at a premium.

---

[5] *See* Victoria Hoff, "20 Ingredients a Clean Cosmetic Chemist Would Avoid," https://www.byrdie.com/toxic-beauty-ingredients-4782646 (June 21, 2023).

[6] *See* Nutrition Insight, "Synthetic Versus Natural Ingredients: More Than Meets the Eye," https://www.nutritioninsight.com/news/synthetic-versus-natural-ingredients-more-than-meets-the-eye.html (May 19, 2022).

[7] *See* U.S Food & Drug Administration, "Small Business & Homemade Cosmetics: Fact Sheet," https://www.fda.gov/cosmetics/resources-industry-cosmetics/small-businesses-homemade-cosmetics-fact-sheet (February 2, 2022).

[8] *Id.*

19.     Recognizing the lack of guidance on the meaning of the term "natural,"  the United States Federal Trade Commission ("FTC") issued its stance on what the term "all natural" means in the context of cosmetic products.[9]  The Director of the FTC's Bureau of Consumer Protections stated that "'All Natural' or '100 percent natural' means…that no artificial ingredients or chemicals" are used in the product.[10]  Synthetic ingredients fall under the umbrella of artificial ingredients as they are manmade in a laboratory.

20.     The FTC's interpretation of the meaning of "all natural" supports how a reasonable consumer would also likely interpret the term "natural" on labels of cosmetic products to carry the same meaning.

**B.     The LilyAna Products And Representations At Issue**

21.     As described *supra*, Defendant manufactures, markets, advertises, labels, and sells natural skincare products, including LilyAna Eye Cream and Face Cream.

22.     True and correct images of the Products and Natural Representation are as follows:

---

[9] *See* Federal Trade Commission, "Four Companies Agree to Stop Falsely Promoting Their Personal-Care Products as 'All Natural' or '100% Natural'; Fifth is Charged in Commission Complaint," https://www.ftc.gov/news-events/news/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care-products-all-natural-or-100-natural (April 12, 2016).

[10] *Id.*

---

1

**LilyAna Naturals Eye Cream**

2

*New Labels & Packaging[11]*

3
4
5
6
7
8
9
10
11
12
13




14
15
16
17
18
19
20
21
22
23
24
25
26




27

---

[11] In February 2023, LilyAna Naturals announced the release of new packaging and labels for all Products, including the eye cream and face cream.

28

---

*Old Labels*




**LilyAna Naturals Face Cream**





23.     Each Product prominently displays the term natural (outlined in red in the above Product Images for ease of reference) on the front and back of the packaging and on the front of the Product.

**C.     Defendant's Natural Marketing Scheme Is False And Misleading**

24.     As the word "Naturals" appears in Defendant's brand name, all of the Products prominently display the word "natural" on the packaging and the bottles.  Defendant's claim that the skincare Products are natural is false and misleading.  Defendant repeats these false statements in materially identical form on its website.[12]

25.     Defendant's website fails to list all ingredients contained in the Products. Defendant only lists the "key ingredients" on its website.[13]  By listing only "key ingredients," Propylene Glycol and Polysorbate-60, synthetic ingredients, are disturbingly omitted from the Products' ingredient lists.  Failing to draw attention to the Products' synthetic ingredients leads reasonable consumers Defendant's false and misleading claims that the Products are natural.

26.     In fact, LilyAna Naturals Products are *not* natural skincare products.  The LilyAna Naturals Eye Cream contains Propylene Glycol and/or Polysorbate 60.  The LilyAna Naturals Face Cream contains Polysorbate 60.  Both ingredients are synthetic.  Propylene Glycol is a liquid substance used to absorb water and maintain moisture in certain medicine, cosmetic, and food products.[14]  It is also often found in polyester, deicing solutions, food colorings, and artificial fog and smoke.[15]  Polysorbate 60 is an emulsifier used to prevent oil and water from separating in cosmetic products.[16]  It is also often found in processed foods.[17]

---

[12] *See* https://lilyananaturals.com/.

[13] *See* https://lilyananaturals.com/products/eye-cream; https://lilyananaturals.com/products/face-cream.

[14] *See* National Library of Medicine, "Propylene Glycol," https://pubchem.ncbi.nlm.nih.gov/compound/Propylene-glycol.

[15] *Id*.

[16] *See* INCI Decoder, "LilyAna Naturals Face Cream: Ingredient Overview," https://incidecoder.com/products/lilyana-naturals-face-cream (December 30, 2021); AARM, "Polysorbate 60," https://restorativemedicine.org/library/monographs/polysorbate-60/.

[17] *See* AARM, "Polysorbate 60," https://restorativemedicine.org/library/monographs/polysorbate-60/.

27.     Reasonable consumers expect the term "natural" to mean that a product only contains ingredients derived from nature and does not contain synthetic ingredients made in a lab. This interpretation of the term "natural" is consistent with the FTCs position on what "all natural" means.[18]  It is also consistent with the definition the Mayo Clinic has adopted: "the term 'natural' represents ingredients that are directly derived from nature and not created in a lab."[19]

28.     In addition to the definitions adopted by the FTC and the Mayo Clinic, the average consumer's understanding of the term "natural" is also consistent with the definition of "natural" in Merriam-Webster's Dictionary: "existing in or produced by nature : not artificial."[20]

29.     An average consumer seeking to purchase natural skincare products looks for representations on labels that a product is natural and the consumer will interpret that representation to mean that all ingredients are derived from nature.

30.     Even for the select few consumers who may read the ingredient lists attached to products, the vast majority of consumers do not possess the scientific knowledge or expertise to parse through the list of ingredients with unfamiliar names to determine if an ingredient is in fact natural.

31.     Nothing in the natural claim language on LilyAna Naturals packaging suggests that the Products also contain synthetic ingredients.  Therefore, an average consumer would most likely interpret natural claims to mean that LilyAna Naturals Products contain only ingredients derived directly from nature.  The bottom line is that the representations that LilyAna Naturals Products are natural are false and misleading, and Defendant is deceiving the consuming public into purchasing the Products through use of this language.  Injunctive relief should require the correction of LilyAna Naturals packaging and the recall of products in the marketplace.

---

[18] *See* Federal Trade Commission, "Four Companies Agree to Stop Falsely Promoting Their Personal-Care Products as 'All Natural' or '100% Natural'; Fifth is Charged in Commission Complaint," https://www.ftc.gov/news-events/news/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care-products-all-natural-or-100-natural (April 12, 2016).

[19] Mayo Clinic Health System, "What are 'Natural' Personal Care Products?" https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/what-are-natural-personal-care-products (June 15, 2021).

[20] *See* Merriam-Webster Dictionary, "Natural," https://www.merriam-webster.com/dictionary/natural.

32.     Because the entire premise of natural skincare is to reduce the use of potentially harmful ingredients by turning to naturally occurring ingredients, consumers electing to purchase natural skincare products care about what they are applying to their skin and are thus selecting LilyAna Naturals Products because of its messaging.  Consumers' desire for reassurance that they will receive natural skincare products is illustrated by the fact that LilyAna Naturals describes its Products on the LilyAna Naturals website as follows: "Our products are made with natural ingredients, and we don't use any bad chemicals that could hurt you or the environment.  Instead, we use all the good stuff from nature to make your skin feel amazing and smell yummy."[21]

33.     Given the motivation and predilections of consumers seeking to purchase natural skincare products, Defendant's false, misleading, and deceptive Natural Representations trick reasonable consumers into choosing its Products over comparable brands.  Indeed, consumers choosing between two natural skincare products, one offering the assurance that it is natural and the other making honest representations that the products are mostly natural containing at least one synthetic ingredient, consumers are likely to choose the former—at the expense of unwitting consumers and Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage.

34.     The Natural Representations were and are material to reasonable consumers, including Plaintiffs, in making purchasing decisions.  Indeed, Plaintiffs relied on Defendant's misrepresentations, described herein, in making their decisions to purchase the Products.  At the time Plaintiffs purchased the Products, Plaintiffs did not know, and had no reason to know, that the Products' labeling and advertising were false, misleading, deceptive, and unlawful as set forth herein.

35.     Defendant materially misled and failed to adequately inform reasonable consumers, including Plaintiffs, that the Products are not natural, but in fact contain synthetic ingredients. Plaintiffs would not have purchased the Products if they had known the truth.  Accordingly, based

---

[21] LilyAna Naturals, "About Us," https://lilyananaturals.com/pages/about.

on Defendant's material misrepresentations and omissions, reasonable consumers, including

Plaintiffs, purchased the Products to their detriment.

## CLASS ALLEGATIONS

36.    **Class Definition.**  Plaintiffs bring this action as a class action pursuant to Federal

Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and all other similarly

situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products for purposes other than resale ("**Nationwide Class**"); and

> All residents of California who, within four years prior to the filing of this complaint, purchased the Products for purposes other than resale ("**California Subclass**").

("Nationwide Class" and "California Subclass," collectively, "**Class**").

37.    **Class Definition Exclusions**.  Excluded from the Class are: (i) Defendant, its

assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling

interests; (iii) federal, state, and/or local governments, including, but not limited to, their

departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

and (iv) any judicial officer presiding over this matter and person within the third degree of

consanguinity to such judicial officer.

38.    **Reservation of Rights to Amend the Class Definition**.  Plaintiffs reserve the right

to amend or otherwise alter the class definition presented to the Court at the appropriate time in

response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

39.    **Numerosity.**  Members of the Class are so numerous that joinder of all members is

impracticable.  Upon information and belief, the Nationwide Class consists of tens of thousands of

purchasers (if not more) dispersed throughout the United States, and the California Subclass

likewise consists of thousands of purchasers (if not more) dispersed throughout the State of

California.  Accordingly, it would be impracticable to join all members of the Class before the

Court.

40.     **Common Questions Predominate.**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.      Whether Defendant engaged in unlawful, unfair, or deceptive business practice by advertising and selling the Products;

b.      Whether Defendant's conduct of advertising and selling the Products as containing only natural ingredient when they do not, constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

c.      Whether Defendant used deceptive representation in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

d.      Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

e.      Whether Defendant advertised the Products with the intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

f.      Whether Defendant's labeling and advertising of Products are untrue or misleading in violation of the Business and Professions Code section 17500, *et seq.*;

g.      Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of the Business and Professions Code section 17500, *et seq.*;

h.      Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

i.      Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.      Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Codes section 17200, *et seq.*;

k.      Whether Plaintiffs and the Class paid more money for the products than they actually received;

l.      How much more money Plaintiffs and the Class paid for the Products than they actually received;

m.      Whether Defendant's conduct constitutes a breach of warranty;

n.      Whether Plaintiffs and the Class are entitled to injunctive relief; and

o.      Whether Defendant was unjustly enriched by its unlawful conduct.

41.     **Typicality.**  Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members, purchased Defendant's misleading

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    14

and deceptive Products.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

42.     **Adequacy.**  Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent.  Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

43.     **Superiority and Substantial Benefit**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.     The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.     Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.     Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.     When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.     This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendant.

44.     **Inconsistent Rulings.**  Because Plaintiffs seek relief for all members of the Class, the prosecution of separate action by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

45.     **Injunctive/Equitable Relief.**  The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

46.     **Manageability.**  Plaintiffs and Plaintiffs' Counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT ONE**
**Violation of California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**
(***On Behalf of the California Subclass***)

47.     **Incorporation by Reference.**  Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

48.     **California Subclass.**  Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

49.     **The UCL.**  California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

50.     **False Advertising Claims**.  Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the natural representation—despite the fact that the Products contain synthetic ingredients.  Such claims and omissions appear on the label and packaging of the Products, which are sold at retail stores and point-of-purchase displays.

51.     **Defendant's Deliberately False and Fraudulent Marketing Scheme**.  Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products contain synthetic ingredients.  Defendant knew and knows that the Products are not truly natural, though Defendant

intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Products contain only natural ingredients.

52. **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that the Products are truly natural and thus better than similar skincare products.

53. **Injury in Fact.** Plaintiffs and the Class have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's False Advertising Claims— namely Plaintiffs and the Class lost the purchase price for the Products they bought from the Defendant.

54. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code section 17200.

55. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

56. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

57.     **Injunction.**  Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and Class Members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiffs and Class Members seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

58.     **Causation/Remedies.**  As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiffs and Class Members were harmed in the amount of the purchase price they paid for the Products.  Further, Plaintiffs and Class Members have suffered and continue to suffer economic losses including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.  Accordingly, Plaintiffs seeks a monetary award for violation of the UCL in restitution and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

              1.     **"Unfair" Prong**

59.     **Unfair Standard.**  Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid."  *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

60.     **Injury.**  Defendant's action of mislabeling the Products with the Natural Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive.  Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Products.  Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

61.     **Balancing Test.**  Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code section 17200.

1   They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

2   victim." *Davis v. HSBC Bank Nevada*, N.A., 691 F.3d 1152, 1169 (9th Cir. 2012).

3      62.   **No Utility.**  Here, Defendant's conduct of labeling the Products with the Natural

4   Representations when the Products contain synthetic ingredients that are not natural has no utility

5   and financially harms purchasers.  Thus, the utility of Defendant's conduct is vastly outweighed by

6   the gravity of harm.

7      63.   **Legislative Declared Policy.**  Some courts require that "unfairness must be tethered

8   to some legislative declared policy or proof of some actual or threatened impact on competition."

9   *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

10     64.   **Unfair Conduct.**  Defendant's labeling and advertising of the Products, as alleged

11  herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

12  Defendant knew or should have known of its unfair conduct.  Defendant's misrepresentations

13  constitute an unfair business practice within the meaning of California Business and Professions

14  Code section 17200.

15     65.   **Reasonably Available Alternatives.**  There existed reasonably available

16  alternatives to further Defendant's legitimate business interests, other than the conduct described

17  herein.   Defendant could have refrained from labeling the Products with the Natural

18  Representations.

19     66.   **Defendant's Wrongful Conduct.**  All of the conduct alleged herein occurs and

20  continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern or

21  generalized course of conduct repeated on thousands of occasions daily.

22     67.   **Injunction.**  Pursuant to Business and Professions Code sections 17203, Plaintiffs

23  and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or

24  employ its practices of labeling the Products with the Natural Representations.

25     68.   **Causations/Remedies.**  Plaintiffs and the Class have suffered injury in fact and

26  have lost money as a result of Defendant's unfair conduct.  Plaintiffs and the Class paid an

27  unwarranted premium for these Products.  Specifically, Plaintiffs and Class Members paid for

28  Products that contain synthetic ingredients.  Plaintiffs and the Class would not have purchased the

---

Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive.  Accordingly, Plaintiffs seeks a monetary award for violation of the UCL in restitution and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

### 2.   "Fraudulent" Prong

69.   **Fraud Standard.**  The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public.  *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

70.   **Fraudulent & Material Challenged Representation.**  Defendant used the Natural Representations with the intent to sell the Products to consumers, including Plaintiffs and the Class. The Natural Representations are false, and Defendant knew or should have known of their falsity. The Natural Representations are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

71.   **Fraudulent Business Practice.**  As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code section 17200.

72.   **Reasonable and Detrimental Reliance.**  Plaintiffs and Class Members reasonably and detrimentally relied on the material and false Natural Representations to their detriment in that they purchased the Products.

73.   **Reasonably Available Alternatives.**  Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Natural Representations.

74.   **Business Practice.**  All of the conduct alleged herein occurs and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

75.     **Injunction.**  Pursuant to Business and Professions Code sections 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the Natural Representations.

76.     **Causation/Remedies.**  Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct.  Plaintiffs paid an unwarranted premium for the Products.  Specifically, Plaintiffs and Class Members paid for products that they believed contained only natural ingredients, when, in fact, the Products contained synthetic ingredients. Plaintiffs and the Class would not have purchased the Products if they had known the truth. Accordingly, Plaintiffs seek a monetary award for violation of the UCL in restitution and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

### 3.     "Unlawful" Prong

77.     **Unlawful Standard.**   The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable."  *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

78.     **Violations of CLRA and FAL.**  Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "CLRA") and California Business and Professions Code sections 17500, *et seq.* (the "FAL") as set forth below in the sections regarding those causes of action.

79.     **Additional Violations.**  Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors.  This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208.  Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

80. **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

81. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Natural Representations.

82. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

83. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.

84. **Plaintiffs and The Class Lack an Adequate Remedy at Law.** Plaintiffs and Class Members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiffs and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the Plaintiffs to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

85. **Causation/Remedies.** Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiffs and the Class paid an unwarranted premium for the Products. Plaintiffs and Class Members would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products are truly natural. Accordingly, Plaintiffs seek a monetary award for violation of the UCL in restitution and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

<u>**COUNT TWO**</u>
**Violation of California False Advertising Law**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**
**(*On Behalf of the California Subclass*)**

86. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

87. **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

88. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

89. **False & Material Challenged Representation Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Natural Representations disseminated to the public through the Products' labeling, packaging and advertising. These representations were false because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

90. **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of section 17500.

91. **Intent to Sell.** Defendant's Natural Representations were specifically designed to induce reasonable consumers, like Plaintiffs and the Class, to purchase the Products.

92.     **Plaintiffs and Class Members Lack an Adequate Remedy at Law.**  As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiffs and the Class have suffered injury in fact and have lost money.  As such, Plaintiffs requests that this Court order Defendant to restore this money to Plaintiffs and Class Members, and to enjoin Defendant from continuing these unfair practices in violation of the FAL in the future.  Otherwise, Plaintiffs, the Class Members, and the broader public, will be irreparably harmed and/or denied an effective and complete remedy.

93.     **Causation/Remedies.**  As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiffs and Class Members were harmed in the amount of the purchase price they paid for the Products.  Further, Plaintiffs and Class Members have suffered and continue to suffer economic losses including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.  Accordingly, Plaintiffs seek a monetary award for violation of the FAL in restitution and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

**COUNT THREE**
**Violation of California Consumer Legal Remedies Act**
**(Cal. Bus. & Prof. Code §§ 1750, *et seq.*)**
**(Injunctive Relief Only)**
**(*On Behalf of the California Subclass*)**

94.     **Incorporation by Reference.**  Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

95.     **California Subclass.**  Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

96.     **CLRA Standard.**  The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

97.     **Goods/Services.**  The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

98.     **Defendant.**  Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

99.     **Consumers.**  Plaintiffs and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d).

100.    **Transactions.**  The purchase of the Products by Plaintiffs and members of the Class are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

101.    **Violations of the CLRA.**  Defendant violated the following sections of the CLRA by selling the Products to Plaintiffs and the Class through the false, misleading, deceptive, and fraudulent Natural Representations:

a.      Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

b.      Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

c.      Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

102.    **Knowledge.**  Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

103.    **Malicious.**  Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiffs, to increase the sale of the Products.

104.    **Plaintiffs Could Not Have Avoided Injury.**  Plaintiffs and members of the Class could not have reasonably avoided such injury.  Plaintiffs and members of the Class were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiffs and members of the Class would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

105.    **Causation/Reliance/Materiality.**  Plaintiffs and the Class suffered harm as a result of Defendant's violations of the CLRA because they relied on the Natural Representations in

deciding to purchase the Products.  The Natural Representations were a substantial factor.  The Natural Representations were material because a reasonable consumer would consider them important in deciding whether to purchase the Products.

106.    **Injunction.**  Given that Defendant's conduct violated California Civil Code section 1780, Plaintiffs and Class Members are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA.  Plaintiffs have no adequate remedy at law.  Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiffs and the Class.  Under California Civil Code § 1780(a), Plaintiffs and Class Members seek injunctive and equitable relief for Defendant's violations of the CLRA.  On June 20, 2023, Plaintiffs mailed an appropriate demand letter consistent with California Civil Code § 1782(a).  If Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiffs will amend their complaint to include a request for damages as permitted by Civil Code § 1782(d).

**COUNT FOUR**
**Breach of Express Warranty**
***(On Behalf of the Nationwide Class and California Subclass)***

107.    **Incorporation by Reference.**  Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

108.    **Nationwide Class & California Subclass.**  Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

109.    **Defendant Issued an Express Warranty.**  As the designer, manufacturer, marketer, distributor, and/or seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products were natural.  Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class and Subclass.

110.    **The Products Do Not Conform to the Natural Representations.**  In fact, the Products do not conform to Defendant's Natural Representations because the Products are not, in

fact, natural.  By falsely representing the Products in this way, Defendant breached express

warranties.

111.    **Causation/Remedies.**  As a direct and proximate result of Defendant's breach,

Plaintiffs and Members of the Class and Subclass were injured because they: (1) paid money for

Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain

because the Products they purchased were different than Defendant advertised; and (3) were

deprived of the benefit of the bargain because the Products they purchased had less value than

Defendant represented.  Had Defendant not breached the express warranty by making the false

representations alleged herein, Plaintiffs and Class and Subclass Members would not have

purchased the Products or would not have paid as much money as they did for them.

**COUNT FIVE**
**Breach of Implied Warranty**
**(*On Behalf of the Nationwide Class and California Subclass*)**

112.    **Incorporation by Reference.**  Plaintiffs re-allege and incorporate by reference all

allegations contained in this complaint, as though fully set forth herein.

113.    **Nationwide Class & California Subclass.**  Plaintiffs bring this claim individually

and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the

Products within the applicable statute of limitations.

114.    **Defendant is a Merchant.**  Defendant routinely engages in the manufacture,

distribution, and/or sale of the Products and is a merchant that deals in such goods or otherwise

holds themselves out as having knowledge or skill particular to the practices and goods involved.

115.    **Plaintiffs and Class Members Are Consumers.**  Plaintiffs and Members of the

Class and Subclass were consumers who purchased Defendant's Products for the ordinary purpose

of such products.

116.    **Defendant Issued an Implied Warranty.**  By representing the Products as natural,

Defendant impliedly warranted to consumers that the Products were merchantable, such that they

were of the same average grade, quality, and value as similar goods sold under similar

circumstances.

117.    **The Products Were Not Merchantable.**  However, the Products were not natural and therefore not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

118.    **Causation/Remedies.**  As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class and Subclass were injured because they paid money for Products that would not pass without objection in the trade or industry under the contract description.

**COUNT SIX**
**Unjust Enrichment/Restitution**
***(On Behalf of the Nationwide Class and California Subclass)***

119.    **Incorporation by Reference.**  Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

120.    **Nationwide Class & California Subclass.**  Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

121.    **Plaintiffs/Class Conferred a Benefit.**  By purchasing the Products, Plaintiffs and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

122.    **Defendant's Knowledge of Conferred Benefit.**  Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

123.    **Defendant's Unjust Receipt Through Deception.**  Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations and omissions.

124.    **Plaintiffs and Class Members Lack Adequate Remedy at Law.**  Plaintiffs and members of the putative class have been injured as a direct and proximate result of Defendant's inequitable conduct.  Plaintiffs and Class Members lack an adequate remedy at law with respect to

this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

125.    **Causation/Damages.**  As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products.  Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.  Accordingly, Plaintiffs seek a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for relief and judgement against Defendant, as follows:

a.  **Certification**: For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;

b.  **Declaratory Relief:** For an order declaring that Defendant's conduct violated the statues and laws referenced herein;

c.  **Injunction:** For an order requiring Defendant to immediately cease and desist from selling the unlawful products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misconception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those cause of action so permitted;

d.  **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e.  **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

f.  **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

g.   **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

h.   **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

On behalf of themselves and the proposed Class, Plaintiffs demand a trial by jury for all of the claims asserted in this Complaint so triable.

Dated:  July 18, 2023                      Respectfully submitted,

                                       **BURSOR & FISHER, P.A.**

                                       By:   _____*/s/ L. Timothy Fisher*_____
                                                L. Timothy Fisher

                                       L. Timothy Fisher (State Bar No. 191626)
                                       Jenna L. Gavenman (State Bar No. 348510)
                                       1990 N. California Blvd., Suite 940
                                       Walnut Creek, CA 94596
                                       Telephone: (925) 300-4455
                                       Facsimile: (925) 407-2700
                                       E-mail: ltfisher@bursor.com
                                                    jgavenman@bursor.com

                                       *Attorneys for Plaintiffs*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs Jaime Cox and Vicente Baca in this action.  Plaintiff Cox alleges she is a citizen of Pittsburg, California, Contra Costa County.  Plaintiff Baca alleges he is a citizen of Campbell, California, Santa Clara County.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California, this 18th day of July, 2023.

*/s/ L. Timothy Fisher*
L. Timothy Fisher
